IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3097-FL

| | | |
|---|---|---|
| DANIEL THOMAS FARRELL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER |
| CHARLES COOPER and JOHNNY HAWKINS, | ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on the parties' cross motions for summary judgment (DE 46, 55) pursuant to Federal Rule of Civil Procedure 56(a). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment and denies plaintiff's motion.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate, filed this action *pro se* pursuant to 42 U.S.C. § 1983 against defendant correctional officer Charles Cooper ("Cooper"). Plaintiff alleges that Cooper violated his right to privacy pursuant to the Fourth Amendment to the United States Constitution in the course of conducting a strip search of plaintiff at Warren Correctional Institution ("Warren"). Plaintiff also alleges a supervisor liability claim against defendant Johnny Hawkins ("Hawkins") who was employed as the Assistant Superintendent for custody and operations at Warren at the time this cause of action arose. Plaintiff seeks both declaratory and injunctive relief, as well as, punitive damages.

Plaintiff attached to his complaint affidavits from inmates William Walker, Jose Martinez,[1] Isaac Wilson, and Jeffrey Spivey, as well as North Carolina Department of Public Safety ("DPS") grievance responses. (See Compl., Exs. C, D.) Plaintiff subsequently filed a motion to appoint counsel, which the court denied.

On January 20, 2014, defendants filed a motion to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted. Defendants also filed a motion seeking a protective order staying discovery until after the court ruled on their motion to dismiss. The motions were fully briefed. On July 14, 2014, the court entered an order denying defendants' motion to dismiss and denying as moot defendants' motion for a protective order. The court subsequently issued a case management order setting forth dates for a discovery and dispositive motion deadline. Plaintiff then filed a second motion to appoint counsel, which the court denied.

On October 14, 2014, plaintiff filed a motion to take a written deposition of an unidentified witness. The court denied plaintiff's motion without prejudice on November 7, 2014. Plaintiff then filed a third motion to appoint counsel, which the court denied.

On April 13, 2015, plaintiff filed a motion for summary judgment, arguing that he is entitled to judgment as a matter of law. In support of his motion, plaintiff attached a personal declaration. Defendants responded to plaintiff's motion, and attached to their memorandum their responses to plaintiff's first, second, and third requests for admissions, as well as their responses to plaintiff's first, second, third, and fourth requests for the production of documents. Defendants then filed a cross-motion for summary judgment on June 26, 2015, and attached the affidavit of Hawkins as well as plaintiff's disciplinary history. Defendants, in their motion for summary judgment, argue that

---

[1] The affidavit submitted by Jose Martinez is not complete. (See Compl. Ex. C.)

2

plaintiff is unable to establish a constitutional violation. In the alternative, defendants argue that they are entitled to the affirmative defense of qualified immunity. Defendants' motion also was fully briefed.

## STATEMENT OF FACTS

Except as where otherwise noted below, the undisputed facts are as follows. At the time the cause of action arose, plaintiff was incarcerated at Warren serving a sentence for his conviction of robbery with a dangerous weapon. (Hawkins Aff., DE 57, ¶ 5.) The incident at issue involves a February 24, 2011, strip search[2] of plaintiff conducted by defendant Cooper in the area of plaintiff's bunk on D-block. (Hawkins Aff. ¶ 7; Compl. p. 3.) At the time of the alleged incident, defendant Cooper was employed as the security threat group ("STG") officer at Warren, and his responsibilities included searching inmates for contraband. (Hawkins Aff. ¶ 11.) Officers at Warren routinely performed "contraband searches" on inmates in order to intercept and deter contraband possession by inmates at the facility. (Id. ¶ 15.) On the date at issue, plaintiff had approximately 33 disciplinary infractions, including several infractions for possession of contraband. (Id. Ex. A.) As a result, plaintiff was at a heightened suspicion for contraband possession at Warren. (Id. ¶ 14.) Plaintiff, however, was not designated as an STG inmate at the time of the search. (Compl. p. 5.)

Plaintiff concedes that strip searches are "a regular part of legitimate prison security." (Pl.'s Resp., DE 59-3, p. 2). Plaintiff, however, contests the manner and place in which the strip search

---

[2] The parties do not dispute that the strip search at issue involved the visual inspection of plaintiff's body cavity, his anus, and thus that the strip search at issue included a visual body cavity search. (Hawkins Aff.¶ 12.) Defendant Hawkins, however, at one point describes the search at issue as a "complete" search, which by definition consists of a strip search, but does not include a body cavity search. (Id. ¶ 7.) Drawing inferences in plaintiff's favor, the court presumes that Hawkins's definition of a "complete" search contemplates a visual body cavity search, but does not include a manual body cavity search. (See id. ¶¶ 7, 12.) For shorthand, the court refers to the search at issue as a strip search, understood to include a visible body cavity search in this instance.

3

was executed. (See id.). Specifically, plaintiff complains of the fact that the strip search was conducted in a public area of D-block near his bed where approximately 25-33 other inmates and two female correctional officers – Officer Katrina Williams ("Williams") and Officer Shaunte Davis ("Davis") – were present. (Compl. p. 3; Pl's Decl., DE 59-1, p. 2.)

Before defendant Cooper began the strip search, plaintiff asked him to conduct the strip search in a nearby restroom. (Pl.'s Decl., DE 59, p. 2.) Cooper refused and threatened plaintiff with administrative segregation if plaintiff did not cooperate with the search. (Id.) Plaintiff then submitted to the strip search, which included the removal of all of plaintiff's clothing. (Id.; Hawkins Aff. ¶ 12.) Cooper prolonged the search by ordering plaintiff to hand him each article of removed clothing separately, although no party describes the length of time the search lasted. (Pl.'s Decl., DE 59-1, p.2.) Cooper, in the course of the search, also directed plaintiff to "grab his butt cheeks, spread them, and to bend at the waist . . . to search [plaintiff's] anus for contraband." (Def.'s Resp. Ex. A, DE 49-1, p. 1.) Cooper did not discover any contraband in the course of the search. (Compl. p. 4.)

On February 24, 2011, plaintiff filed a grievance complaining about the search at issue. (Def.'s Resp., Ex. C, DE 49-3, p. 9.) Plaintiff stated the following in his grievance:

> On 2/24/11 between 7:30 and 8:15 pm STG Officer Cooper approached my bunk area [] of D-Block Halifax motioning to me that I shall stand. He called Female Officer Williams over the radio and requested that she bring him gloves. After placing on the gloves he stated to me, "Strip." I said, "Where?, Here?" In which he stated, "Yeah, this is where you sleep" In which I stated to him, "I[']m pretty positive I have some sort of privacy." He replied, "you have no rights, STRIP." I removed all my clothing between bunks 30 and 32 c/o Cooper then required me to "squat and cough," not once, but twice, then allowed me to redress. There were two female officers in the area, co Williams in the dorm and c/o Davis watching through the glass in the hallway. . . .

4

(Id.)  Afer receiving plaintiff's grievance, prison officials conducted an investigation and obtained witness statements from defendant Cooper, inmate Jeffrey Spivey ("Spivey"), as well as correctional officers Williams and Davis. (Id., pp. 12-17.) In his witness statement, defendant Cooper stated that there were no female correctional officers present during the search and that he did not tell plaintiff that he did not have any rights. (Id., p. 13.) Both Officers Williams and Davis stated in their witness statements that they were not present in D-block when plaintiff was searched. (Id., pp. 14, 16.) However, plaintiff submitted affidavits from inmates Jeffrey Spivey and Isaac Wilson stating that female officers were "present" and "in the direct vicinity" at the time of the search at issue. (Id. p. 12; Compl. Exs. C, D.)  Additionally, defendant Hawkins admitted that Davis and Williams stated during the grievance investigation that they were "present during" plaintiff's search, although they also stated that they "did not see anything." (Def.'s Resp., Ex. A, DE 49-1, p. 4.)

On April 21, 2011, a prison grievance examiner determined that plaintiff's grievance complaining that defendant Cooper engaged in unprofessional behavior during a visual body cavity strip search was unsubstantiated. (Def.'s Resp., Ex. C, DE 49-3, p. 8.)   Defendant Hawkins, however, acknowledges in his affidavit that other inmates have complained about defendant Cooper or search procedures in the past. (Hawkins Aff., DE 57, ¶ 18.)  Hawkins attests that defendant Cooper is a frequent target of inmate grievances due to his position as Warren's facility STG officer. (Id.)  That said, Hawkins attests in his affidavit that to his knowledge, "no complaints by inmates regarding Cooper or his searches of inmates have ever been substantiated." (Id.)

5

Case 5:13-ct-03097-FL   Document 60   Filed 03/03/16   Page 5 of 12

# DISCUSSION

A.  Summary Judgment

   1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. <u>Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 250.

   2.  Analysis

Defendants raise the affirmative defense of qualified immunity in response to plaintiff's allegations that they violated his rights to privacy pursuant to the Fourth Amendment to the United States Constitution. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. <u>Pearson v. Callahan</u>, 555

6

U.S. 223, 236 (2009). In analyzing whether defendants are entitled to qualified immunity, the court first considers whether plaintiff has established a constitutional violation.

The Fourth Circuit has recognized a limited Fourth Amendment right to bodily privacy for prisoners. See Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981) ("Most people . . . have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating."); see also Etters v. Bennett, No. 5:09-CT-3187-D, 2011 WL 976472, at *10 (E.D.N.C. Mar. 16, 2011) (stating that the Fourth Circuit in Lee recognized that "the Fourth Amendment encompasses a very narrow right to bodily privacy in prison"); cf., Hamer v. Jones, 364 F. App'x 119, 125 (5th Cir. 2010) ("strip search of a male prisoner by a female guard in the absence of exigent circumstances presents a colorable Fourth Amendment claim") (citations omitted).

Under the Fourth Amendment, a search is reasonable if the need for the search outweighs the invasion of personal rights that the search entails. See Bell v. Wolfish, 441 U.S. 520, 559 (1979) (upholding prison policy providing for a visual body cavity strip search of prison inmates, finding that prisons are places fraught with serious security dangers in which inmates attempt to secrete contraband by concealing it in body cavities). The Court in Bell held that the following factors must be balanced in determining the constitutionality of a search: the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. See id.

In Lee, the Fourth Circuit held that male prison guards violated a female inmate's constitutional rights when they seized and restrained her while a female nurse forcefully removed the inmate's underclothing in a prison health clinic room. See Lee, 641 F.2d at 1118-1120. The

7

Fourth Circuit observed that there was no necessity for the male prison guards to be in the room because the female inmate had offered to voluntarily remove her clothing if the male guards would leave. Id. at 1120. By contrast, the court in Lee held that the same male prison guards did not violate the female inmate's constitutional rights when they held the female inmate's arms and legs, restraining her, while a female nurse searched the female inmate's vagina for matches, because they had "conclusively established" a "necessity for it." See id. at 1119 & 1120. In that instance, the Fourth Circuit held that defendants had established such a necessity because the plaintiff inmate had been acting bizarrely, had set her dress afire, tied an electrical cord around her neck, and female employees could not restrain her. Id. at 1120-21.

Here, as stated, plaintiff does not take issue with the scope of the strip search. Rather, plaintiff focuses on the manner and location in which the search was conducted. Plaintiff takes issue with the fact that the search allegedly was conducted in front of 25-33 inmates and while two female officers where present in the housing block, when the search could have been conducted privately in a nearby restroom.

There is some variance in the evidence as to the location of the female officers William and Davis during the search. Plaintiff stated in his grievance that "[t]here were two female officers in the area, co Williams in the dorm and c/o Davis watching through the glass in the hallway. . . . (Def.'s Resp., Ex. C, DE 49-3, p. 9.) (emphasis added). Inmates Jeffrey Spivey and Isaac Wilson stated that female officers were "present" and "in the direct vicinity" at the time of the search at issue. (Compl. Exs. C, D.) According to admissions by Hawkins, Davis and Williams stated during the grievance investigation that they were "present during" plaintiff's search, although they also stated that they "did not see anything." (Def.'s Resp., Ex. A, DE 49-1, p. 4.) Plaintiff also describes

8

the surroundings during the search as being in the "D-block" between two rows of bunk beds, where approximately 25-33 other inmates were present. (Def.'s Resp., Ex. C, DE 49-3, p. 9.; Compl. p. 3; Pl's Decl., DE 59-1, p. 2.)

Viewing this evidence in the light most favorable to plaintiff, the court assumes for the purposes of the parties' pending motions that both female officers were present in the "D-block" housing unit of the facility, and that at least one was present in the same room along with 22-35 inmates and bunk beds, while the search was conducted. At least one was looking into the dorm room from a window in a hallway door. Plaintiff, however, does not allege that any female guard actually conducted the strip search, was touching him, or was standing next to him during the strip search. Nor does plaintiff allege that either female guard intentionally stood by for the purposes of observing the strip search. Nor does plaintiff allege that either female officer actually viewed plaintiff's genitals in the course of the search, and nothing in the record supports a finding that either female officer actually viewed plaintiff's genitals.

Further, even assuming the female officers viewed plaintiff's genitals at some point in the search, such exposure is not *per se* unconstitutional. See Lee, 641 F.2d at 1118-1121. Rather, the court must consider other factors such as institutional security and the prison's valid interest in efficiently positioning both female and male guards. See id. at 1121; Riddick v. Sutton, 794 F. Supp. 169, 173 (E.D.N.C. 1992); see also Timm v. Gunter, 917 F.2d 1093, 1101-1102 (8th Cir. 1990) (holding that minimal intrusions on inmates' privacy are outweighed by institutional concerns for safety and equal employment opportunity); Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988) (recognizing the security interest in placing staff members most efficiently within the facility as well as the prison's valid interest in hiring women for positions as guards); Johnson v. Phelan,

9

69 F.3d 144, 146-151 (7th Cir. 1995) ("Unless female guards are shuffled off to back office jobs, itself problematic under Title VII, they are bound to see the male prisoners in states of undress. Frequently. Deliberately. Otherwise, they are not doing their jobs.").

Additionally, the court must consider the frequency and duration of the alleged exposure. For instance, this action challenges observation of a strip search by two female guards amongst a crowd of inmates, and is distinguishable from prior case law in this circuit stating that repeated and consistent cross-gender viewing of inmates undressed violates the Fourth Amendment. See X v. Bratten, No. 91-6335, 1994 WL 410888, at *3 (4th Cir. Aug. 8, 1994) (finding a genuine issue of material fact as to constitutionality of search where inmate alleged female guards regularly observed him in the shower and also observed him in the course of a strip search); see also, Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 565-566 (W.D. Va. 2000) (denying summary judgment where plaintiff alleged female correctional officers' regularly observed male inmates in the shower). This case is also markedly distinguishable from the direct restraint by male guards during removal of undergarments, as was the case in Lee. 641 F.2d at 1120.

This case, instead, is more analogous to cases recognizing that isolated or de minimis incidents of exposure of an inmate's genitals to a guard of the opposite sex are insufficient to establish a constitutional violation. See Bratten, 1994 WL 410888 * 1 (noting the court's earlier affirmance of district court's dismissal of claims that female guards saw plaintiff on "occasional, accidental basis while he was nude"); Riddick, 794 F. Supp. at 173 (granting summary judgment to defendants where, among other factors, "the record shows that female guards have never maintained anything other than a professional demeanor during those instances in which they had occasion to view a nude or partially nude inmate"); Adams v. Thompson, C/A No. 3:07-3884-DCN-JRM, 2008

10

WL 8099780, at *4 (D.S.C. Dec. 19, 2008) ("A male inmate's right to privacy is generally not violated by the occasional, inadvertent observation by female guards.") (citations omitted), aff'd, 331 F. App'x 193 (4th Cir. 2009). Based upon the foregoing, under Bell, the scope, manner, and place factors weigh in favor of finding the search constitutional. See 441 U.S. at 559.

The court now turns to the remaining Bell factor–the justification for initiating the search. The court is cognizant of the deference afforded correctional institutions in devising reasonable search policies as set forth in Florence v. Bd. of Chosen Freeholders of Cty of Burlington, __U.S. __, 132 S.Ct. 1510, 1517 (2012), and as recently applied by Goins v. Horne, No. 4:13-CV-01269, 2014 WL 4273319, at *2-3 (D.S.C. Aug. 29, 2014), aff'd, 592 F. App'x 214 (4th Cir. 2015). Prison officials have a legitimate penological safety interest in maintaining prison safety and preventing the introduction of contraband into a prison. See Hudson v. Palmer, 468 U.S. 517, 526-527 (1984); see also, Muhammad v. Fleming, No. 7:14-cv-00421, 2015 WL 1931289, at * 2 (W.D. Va. Apr. 28, 2015) (finding policy forbidding inmates from covering windows on cell doors while they use the toilet constitutional because policy furthers overriding security interest and responsibility to maintain safety), aff'd, 618 F. App'x 183 (4th Cir. 2015); but see, Jones v. Price, 696 F. Supp. 2d 618, (N.D. W. Va. 2010) (finding genuine issue of material fact where strip search was conducted in view of a female booking agent when a private area was located 10 feet away).

In this case, defendant Cooper, Warren's STG officer, was responsible for searching inmates for contraband, and conducted the strip search of plaintiff on the date at issue. (Hawkins Aff. ¶ 11.) Although the search did not reveal any contraband, plaintiff had a documented history of possession of contraband. (Hawkins Aff. Ex. A.) Defendant Hawkins attests in his affidavit that such contraband searches are "the only effective means to intercept and deter contraband possession by

11

inmates within the facility." (Id. ¶ 15.) Moreover, such searches "must be spontaneous and without allowance for inmate delay. Otherwise, inmates would be able to hide the contraband which officers seek during the searches." (Id.). Accordingly, refusal to move the search to a nearby bathroom was not unreasonable in light of the prison's interest in maintaining order and effective searches. Accordingly, the court finds that <u>Bell</u> factor taking into account the justification for the search weighs in favor of finding that the search was reasonable.

After reviewing all of the <u>Bell</u> factors, the court finds that the search at issue was constitutional. Given the fact that there is no underlying constitutional violation, plaintiff's supervisor liability claim against defendant Hawkins also lacks merit. <u>See</u> <u>Hinkle v. City of Clarksburg, W. Va.</u>, 81 F.3d 416, 420 (4th Cir. 1996) (holding that absent an underlying constitutional violation, no § 1983 liability attaches to a supervisor). Because plaintiff failed to establish a constitutional violation, defendants are entitled to qualified immunity. Thus, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

## CONCLUSION

Based upon the foregoing, defendants' motion for summary judgment (DE 55) is GRANTED and plaintiff's motion for summary judgment (DE 46) is DENIED. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 3rd day of March, 2016.

LOUISE W. FLANAGAN
United States District Judge